BART M. DAVIS, IDAHO STATE BAR NO. 2696
UNITED STATES ATTORNEY
SYRENA C. HARGROVE, IDAHO STATE BAR NO. 6413
ASSISTANT UNITED STATES ATTORNEY
DISTRICT OF IDAHO
1290 W. Myrtle St. Suite 500
Boise, ID 83702-7788
TELEPHONE:     (208) 334-1211
FACSIMILE:     (208) 334-1413
E-MAIL: syrena.hargrove@usdoj.gov

DAVID P. BURNS
ACTING ASSISTANT ATTORNEY GENERAL
JEFFREY B. KAHAN, PENNSYLVANIA BAR NO. 93199
TRIAL ATTORNEY
U.S. DEPARTMENT OF JUSTICE, CAPITAL CASE SECTION
1331 F. STREET, NW; 6TH FL
WASHINGTON, DC 20530
TELEPHONE:     (202) 305-8910
FACSIMILE:     (202) 353-9779
E-MAIL: jeffrey.kahan@usdoj.gov
Attorneys for United States of America

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JOSEPH EDWARD DUNCAN, III,<br><br>Petitioner/Appellant,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent/Appellee. | No. 20-99001<br>Case No.  2:17-CV-00091-EJL<br>          2:07-CR-00023-EJL<br>District of Idaho<br><br>**DEATH PENALTY CASE**<br><br>**UNITED STATES' RESPONSE TO APPLICATION FOR CERTIFICATE OF APPEALABILITY** |

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS..................................................................i

TABLE OF AUTHORITIES ........................................................ iii

STATEMENT OF THE CASE.......................................................1

    A.    The Crime ........................................................................1

    B.    Judicial Proceedings ........................................................3

ISSUES PRESENTED FOR REVIEW ..........................................9

ARGUMENT................................................................................11

I.    No certificate of appealability should issue for Duncan's procedurally defective claims....................................................................11

    A.    Procedural Default...............................................13

        1.    Duncan abandoned eight of his claims. .......................14

        2.    Duncan cannot demonstrate "cause" to excuse default. ...................................................................18

        3.    Duncan's ineffective assistance allegation fails to excuse default. .............................................................22

    B.    Statutory Claims.................................................23

II.    No COA should issue on Duncan's ineffective assistance of counsel claims. .......................................................................24

    A.    Ineffective assistance claims involving trial and sentencing ........24

        1.    Duncan cannot show prejudice from the alleged deficiencies. .............................................................25

        2.    Duncan cannot show structural error and avoid the prejudice requirement. ...............................................28

3.       Alternatively, counsel's performance was not deficient. ..................................................................... 31

B.       Ineffective assistance claims involving the retrospective competency hearing. ............................................... 33

III.   No COA should issue on claim 5 for an additional reason: Reasonable jurists would not debate the district court's decision that it properly permitted Duncan to represent himself. ............................... 38

CONCLUSION ...................................................................... 41

Form 8. Certificate of Compliance for Briefs ................................. 42

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Barefoot v. Estelle*, 463 U.S. 880 (1983)............................................................. 12

*Beard v. Banks*, 542 U.S. 406 (2004) ................................................................ 40

*Bell v. Cone*, 535 U.S. 685 (2002).................................................................... 29

*Coleman v. Calderon*, 210 F.3d 1047 (9th Cir. 2000) ........................................ 17

*Connally v. Gen. Constr. Co.*, 269 U.S. 385 (1926) ........................................... 15

*Cook v. Schriro*, 538 F.3d 1000 (9th Cir. 2008) ............................................... 22

*Dixon v. Ryan*, 932 F.3d 789 (9th Cir. 2019)................................................... 20

*Duncan v. United States*, 136 S. Ct. 1159 (2016)................................................ 9

*Dusky v. United States*, 362 U.S. 402 (1960) .................................................. 20

*Faretta v. California*, 422 U.S. 806 (1975)............................................. 22, 38, 39

*Godinez v. Moran*, 509 U.S. 389 (1993) ......................................................... 20

*Helvering v. Gowran*, 302 U.S. 238 (1937) ...................................................... 17

*Higgs v. United States*, 711 F. Supp. 2d 479 (D. Md. 2010)............................... 15

*Hovey v. Ayers*, 458 F.3d 892 (9th Cir. 2006).................................................. 30

*Howard v. Clark*, 608 F.3d 563 (9th Cir. 2010) ........................................... 25, 28

*Illinois v. Allen*, 397 U.S. 337 ..................................................................... 39

*Indiana v. Edwards*, 554 U.S. 164 (2008)....................................................... 20

*James v. United States*, 550 U.S. 192 (2007).................................................... 15

*McClain v. Calderon*, 134 F.3d 1383 (9th Cir. 1998)........................................ 17

*Medellin v. Dretke*, 544 U.S. 660 (2005) ............................................................ 23

*Murray v. Carrier*, 477 U.S. 478 (1986) ........................................................... 18

*Odom v. United States*, 455 F.2d 159 (9th Cir. 1972) ....................................... 19

*Panetti v. Stephens*, 727 F.3d 398 (5th Cir. 2013) ............................................ 20

*Petrocelli v. Angelone*, 248 F.3d 877 (9th Cir. 2001) ....................................... 13

*Reed v. Ross*, 468 U.S. 1 (1984) .................................................................. 15, 17

*Reina-Rodriguez v. United States*, 655 F.3d 1182 (9th Cir. 2011) ................ 15, 30

*Ring v. Arizona*, 536 U.S. 584 (2002) ............................................................... 39

*Roadway Exp., Inc. v. Piper*, 447 U.S. 752 (1980) ........................................... 30

*Rumbaugh v. Procunier*, 753 F.2d 395 (5th Cir. 1985) ..................................... 20

*Rupe v. Wood*, 93 F.3d 1434 (9th Cir. 1996) .................................................... 27

*Slack v. McDaniel*, 529 U.S. 473 (2000) ................................... 12, 13, 18, 25, 28

*Smith v. Murray*, 477 U.S. 527 (1986) .............................................................. 15

*Strickland v. Washington*, 466 U.S. 668 (1984) ............................................ 25, 28

*Teague v. Lane*, 489 U.S. 288 (1989) .............................................................. 15, 40

*Travelers Prop. Cas. Co. of Am. v. ConocoPhillips Co.*, 546 F.3d 1142 (9th Cir. 2008) .................................................................................................. 17

*United States v. Addonizio*, 442 U.S. 178 (1979) ............................................. 12

*United States v. Cronic*, 466 U.S. 648 (1984) ................................................... 29

*United States v. Davis*, 285 F.3d 378 (5th Cir. 2002) ....................................... 39

*United States v. Duncan*, 599 F. App'x 679 (9th Cir. 2015) ........................ 20, 35

*United States v. Duncan*, 643 F.3d 1242 (9th Cir. 2011) ................................. 16

*United States v. Fell*, 531 F.3d 197 (2d Cir. 2008) ........................................... 39

*United States v. Ferguson*, 560 F.3d 1060 (9th Cir. 2009) ................................. 20

*United States v. Frady*, 456 U.S. 152 (1982) ................................................13, 19

*United States v. Guess*, 203 F.3d 1143 (9th Cir. 2000) ....................................... 18

*United States v. Haldeman*, 559 F.2d 31 (D.C. Cir. 1976) ............................... 27

*United States v. Hammer*, 404 F. Supp. 2d. 676 (M.D. Pa. 2005) ..................... 13

*United States v. Higgs*, 353 F.3d 281 (4th Cir. 2003) ........................................ 39

*United States v. Jingles*, 702 F.3d 494 (9th Cir. 2012) ....................................... 19

*United States v. Mikels*, 236 F.3d 550 (9th Cir. 2001) ....................................... 24

*United States v. Ortega-Ascanio*, 376 F.3d 879 (9th Cir. 2004) .......................... 17

*United States v. Pirro*, 104 F.3d 297 (9th Cir. 1997) ......................................... 13

*United States v. Ratigan*, 351 F.3d 957 (9th Cir. 2003) ..................................... 23

*United States v. Roof*, 225 F. Supp. 3d 394 (D.S.C. 2016) ................................. 39

*United States v. Sherwood*, 98 F.3d 402 (9th Cir. 1996) ..................................... 28

*Weaver v. Massachusetts*, 137 S. Ct. 1899 (2017) .............................................. 28

*Welch v. United States*, 136 S. Ct. 1257 (2016) ................................................. 18

*Williams v. Calderon*, 52 F.3d 1465 (9th Cir. 1995) .......................................... 24

**STATUTES**

18 U.S.C. § 924(c) ................................................................................................ 3

18 U.S.C. § 924(j) ................................................................................................. 3

18 U.S.C. § 1201(a)(1) .......................................................................................... 3

18 U.S.C. § 1201(g) ............................................................................................... 3

18 U.S.C. § 2251(a) ............................................................................................... 3

18 U.S.C. § 2251(e) ............................................................................................... 3

18 U.S.C. § 3593(c) ................................................................ 23

18 U.S.C. § 3595(a) .................................................................. 9

18 U.S.C. § 3591 ....................................................................... 3

18 U.S.C. § 3592 ....................................................................... 3

18 U.S.C. § 3593 ....................................................................... 3

18 U.S.C. § 3594 .................................................................... 3, 4

18 U.S.C. § 3595 ....................................................................... 3

18 U.S.C. § 3596 ....................................................................... 3

18 U.S.C. § 3597 ....................................................................... 3

18 U.S.C. § 3598 ....................................................................... 3

18 U.S.C. § 3599 ....................................................................... 3

28 U.S.C. § 753 ....................................................................... 23

28 U.S.C. § 2253(c)(2) ........................................................ 12, 23

28 U.S.C. § 2255 ......................................................... 9, 12, 13, 19

**RULES**

FED. R. APP. P. 4(b)(1)(A) ......................................................... 9

This Court should deny Duncan's request for a certificate of appealability (ECF No. 27, "Motion"). The claims are either procedurally defective or they fail on their merits, or both.

## STATEMENT OF THE CASE

### A. The Crime

In April 2005, Duncan left North Dakota on a cross-country road trip, intending to identify children he could abduct, rape, and murder as "revenge" for the perceived wrongs he had suffered in his life. (CR Dkt. 843 at 33-34, 52-53.) For several weeks, he used sophisticated surveillance techniques to stalk possible victims, focusing on "homes with small children." (*Id.* at 52.) Duncan also spent time exploring isolated campsites where he could torment and kill his victims without being detected. (*Id.*)

Early in the morning of May 16, 2005, Duncan broke into a rural home in Coeur d'Alene, Idaho, intending to kidnap two children who lived there. (*United States v. Duncan*, Appeal No. 08-99031, ECF No. 86-1 at 9243.) He had surveilled the house and knew the children—nine-year-old D.G., a boy, and eight-year-old S.G., a girl—were inside with their mother, Brenda G., their mother's boyfriend, Mark M., and their 13-year-old brother, Sl.G. (*Id.*) Duncan wore a hat, mask, and gloves, and he carried a hammer, duct tape, zip ties, sawed-off shotgun, and night-vision goggles. (*Id.*)

1

Duncan woke Brenda at gunpoint and forced her to take him to the bedrooms, where he collected the remaining family members and led them to the living room. (*Id.*) He forced the family members to lie face down on the floor, and he bound their hands and feet with duct tape and zip ties. (*Id.*) Duncan then took the three children outside. After forcing D.G. and S.G. to lie on the grass, Duncan used his hammer to bludgeon Sl.G. until he believed the child was dead. (*Id.*) Duncan returned to the house and used the hammer to bludgeon Brenda and Mark. (*Id.*) After checking on Sl.G., Brenda, and Mark, and delivering additional blows, Duncan satisfied himself that they were dead. He loaded D.G. and S.G. into a stolen rental car and drove them to a secluded campsite in the Lolo National Forest in Montana. (*Id.*)

Duncan held D.G. and S.G. at his camp for almost seven weeks, during which he repeatedly raped and tortured the children and made video recordings of his crimes. (*Id.*) On or about June 22, 2005, Duncan murdered D.G. by shooting him with the sawed-off shotgun. (*Id.* at 9243-44.) Duncan kept S.G. at the campsite and continued to abuse her for another ten days before taking her back to Coeur d'Alene to eat at a restaurant. (*Id.* at 9244.) An employee and a customer recognized the girl and called the police, resulting in Duncan's arrest. (*Id.*)

**B.     Judicial Proceedings**

Idaho state officials charged Duncan with multiple counts of kidnapping and murder, to which he pleaded guilty. (*Id.*) Separately, a federal grand jury in the District of Idaho retuned a ten-count indictment, charging Duncan with, among other offenses, three death-eligible crimes: kidnapping a minor resulting in death (18 U.S.C. § 1201(a)(1) and (g)), sexual exploitation of a child resulting in death (18 U.S.C. § 2251(a) and (e)), and using a firearm during and in relation to a crime of violence resulting in death (18 U.S.C. § 924(c) and (j)). (CR Dkt. 1.) As to those three offenses, the Government filed a notice of intent to seek the death penalty. (CR Dkt. 11.)

Duncan pleaded guilty to the federal charges. (*United States v. Duncan*, Appeal No. 08-99031, ECF No. 86-1 at 9244.) Pursuant to the Federal Death Penalty Act ("FDPA"), 18 U.S.C. §§ 3591-99, the district court began to empanel a jury to recommend sentences. (*United States v. Duncan*, Appeal No. 08-99031, ECF No. 86-1 at 9244.) On the second day of jury selection, Duncan moved to represent himself. (*Id.* at 9244-45.) The court examined Duncan about his motivations and competency and then ordered that he be evaluated by a psychologist. (*Id.*) Duncan ultimately underwent evaluation by two court-appointed psychologists, whose services included a review of his history and mental condition. (*Id.* at 9245-46; CR Dkt. 843 at 14-16.) Both

psychologists concluded that Duncan was competent. (*United States v. Duncan*, Appeal No. 08-99031, ECF No. 86-1 at 9245-46.)

Duncan's attorneys, however, engaged three mental health experts, each of whom concluded that Duncan was incompetent. (*Id.* at 9245.) After reviewing the competency evaluations, the district court found "no good faith doubt that [Duncan was] competent to proceed." (CR Dkt. 494 at 12.) It further found the reports and conclusions of its appointed experts were "more credible" than those of the defense experts. (*Id.* at 11.) The court noted that Duncan had never exhibited irrational behavior in court nor had his attorneys raised any concerns about his competence until he tried to dismiss them. (*Id.* at 7-9.) The court ruled that Duncan's waiver of counsel was knowing, intelligent, and voluntary. (CR Dkt. 502 at 3-4.) It appointed Duncan's attorneys to act as standby counsel to assist him in obtaining "discovery and defense materials." (*Id.* at 8-10.)

Following the sentencing hearing, the jury unanimously recommended a death sentence for each of the three capital counts. (CR Dkt. 598 at 1-2.) The district court imposed the sentences on August 27, 2008. (*Id.*); *see* 18 U.S.C. § 3594. It also imposed a consecutive life sentence, two concurrent life sentences, and concurrent terms of 120 months on the remaining counts. *See* (CR Dkt. 602 at 3.)

4

Duncan informed the Government that he did not wish to appeal the judgment. *See* (CR Dkt. 606 at 5.) He transmitted a letter to the district court, informing it "that if any appeal is initiated on my behalf it is done contrary to my wishes." (CR Dkt. 607 at 1.) Nonetheless, standby counsel filed a notice of appeal that the Government moved to strike.

The district court held a hearing to determine if Duncan understood his right to appeal and the consequences of his waiver. (*United States v. Duncan*, Appeal No. 08-99031, ECF No. 86-1 at 9246-47; Sealed CR Dkt. 637.) Duncan expressed his understanding and stated he had "no desire . . . to invoke" his right. (*United States v. Duncan*, Appeal No. 08-99031, ECF No. 86-1 at 9247.) He also confirmed he had discussed the matter with standby counsel, understood their position, and made a conscious decision to disregard their advice. (Sealed CR Dkt. 637 at 12-13.) He explained, orally and in writing, that he based his decision on his philosophical and religious views. (*Id*. at 9-11, 13-14, 17; CR Dkt. 613.) Duncan asserted, "I understand the process, I understand the law, I understand the history of the law," and "I do not have any intention of appealing." (*Id.* at 16.) He added, "I've made my choices and now you have to make yours . . . . I want to accept that choice, but I don't want to participate in it." (*Id.*) The court found Duncan competent to represent himself and held that he had knowingly, intelligently, and voluntarily

waived his right to appeal.  (*Id.* at 19-22.)  It therefore struck the notice of appeal filed by standby counsel.  (*Id.* at 22; CR Dkt. 612.)

Standby counsel nevertheless transmitted their notice of appeal to this Court, which issued an order to show cause why the appeal should not be dismissed.  (*United States v. Duncan*, Appeal No. 08-99031, ECF No. 4.) Shortly before argument on the order to show cause, and more than two years after he waived his right to appeal, Duncan submitted a handwritten letter to this Court, reiterating his reasons for forgoing appeal.  (*Id.* at ECF No. 76-2.) The letter, however, stated that Duncan had come to believe that it would be "detrimental" to "impose" his desire not to appeal "onto other people," particularly his mother, and thus he wished to "withdraw [his] waiver of appeal."  (*Id.* at 1-2.)

Having previously described Duncan as delusional and incompetent, standby counsel took the position that Duncan's letter mooted any competency concerns or jurisdictional issues and urged this Court to permit an appeal. (*United States v. Duncan*, Appeal No. 08-99031, ECF No. 76-1 at 3-4.)  Instead, this Court remanded the case to the district court with instructions to hold a retrospective hearing to determine if Duncan had competently waived his appeal.  (*United States v. Duncan*, Appeal No. 08-99031, ECF No. 86-1 at 9254.) Standby counsel petitioned for a writ of certiorari in the Supreme Court,

6

arguing that the Eighth Amendment required this Court to accept Duncan's belated request to withdraw his appellate waiver, mooting any question about his competence to forgo appeal. (Pet. for Writ of Cert. at 12-23, *Duncan v. United States*, Supreme Court No. 11-7523 (Nov. 16, 2011).) The Supreme Court denied certiorari. *See* (CR Dkt. 676; *Duncan v. United States*, Supreme Court No. 11-7523.)

Duncan's retrospective competency hearing consumed 23 days, during which the district court heard testimony from a Government expert, four defense experts, numerous lay witnesses (including Duncan's previous defense counsel), and four court-appointed experts who had evaluated Duncan. (CR Dkt. 843 at 8, 41-42, 63.) Based on that evidence, and the court's interactions with Duncan, (*id.* at 50-51, 63), it issued a 66-page opinion, finding that Duncan had competently waived his right to appeal. (*Id.* at 1-66.) The court found Duncan was a pedophile and a narcissist who exhibited signs of a "personality disorder," but that he did not suffer from any "major mental disease or defect." (CR Dkt. 843 at 10-18, 31-36.) It further found no evidence that Duncan was delusional or hallucinatory. (*Id.* at 33-34.) The court rejected, as incredible, contrary opinions offered by Duncan's defense experts. (*Id.* at 19-36.)

7

The district court found that Duncan's mental health, however compromised, did not interfere with his competence to waive appeal. (*Id.* at 37.) It observed that Duncan was intelligent and "had a complete understanding and knowledge of the proceedings and his options." (*Id.* at 49.) The court concluded that Duncan had "clearly and unequivocally waived his right to file an appeal [after] having been fully advised of the consequences of that decision and knowing full well the ramifications of doing so." (*Id.* at 63.) It found that Duncan made a "knowing, voluntary, and rational choice" not to follow standby counsel's advice, and thus validly waived his right to appeal. (*Id.* at 45-46, 62-65.) The court therefore reinstated its order striking standby counsel's notice of appeal. (*Id.* at 66.)

This Court subsequently affirmed these rulings. *See* (CR Dkt. 860; *United States v. Duncan*, Appeal No. 13-99011, ECF No. 55-1 at 2- 5.) It concluded that the district court's findings were based on "valid reasons" that were "supported by evidence in the record." (*United States v. Duncan*, Appeal No. 13-99011, ECF No. 55-1 at 2-4.) It further held the district court applied the correct legal standard for determining competence and that, in any event, its findings established Duncan's competence under any standard. (*Id.* at 3.) Accordingly, it held that standby counsel's notice of appeal "was a nullity." (*Id.*) Moreover, the Court held that Duncan's letter purporting to "withdraw"

8

his waiver was untimely and provided no basis for permitting an appeal. (*Id.* at 4-5 (citing 18 U.S.C. § 3595(a); FED. R. APP. P. 4(b)(1)(A)).) The Supreme Court denied Duncan's subsequent petition for certiorari. *See Duncan v. United States*, 136 S. Ct. 1159 (2016).

Acting through counsel, Duncan timely filed a motion to vacate the judgment pursuant to 28 U.S.C. § 2255 in the district court. (CV Dkt. 4; CR Dkt. 867.) In a pair of orders, that court denied relief and a certificate of appealability. (CV Dkt. 43 & 49.) Duncan filed a notice of appeal (CV Dkt. 51), and this Court granted him permission to move for a certificate of appealability. (ECF No. 2.) This Opposition follows.

## ISSUES PRESENTED FOR REVIEW

In his current motion, Duncan re-ordinated the issues as presented, and rejected, below. For the sake of clarity, the Government provides the following chart to identify the location of the issues, as previously presented, as currently presented, and as previously denied. Because this Court ordered the parties to address whether prior findings, Duncan's plea, or Duncan's appellate waiver bars his current claims, *see* (ECF No. 2), the Government notes its legal objections as a guide to their development in the argument that follows.

9

| 2255 Issue No. | Claim Description | COA Mtn | Dist. Doc. 43 | Default | Relitigation | Stat. Claim | Teague |
|---|---|---|---|---|---|---|---|
| 1 | Ineffective assistance of trial counsel. | 34-62 | 9-22 | | | | ✔ |
| 2 | The court and counsel failed to protect Duncan's rights when the trial judge met with attorney Peven. | 63-75 | 23-29 | ✔ | | ✔ | ✔ |
| 3 | Duncan was incompetent to plead guilty and his plea was not knowing, voluntary and intelligent: Includes ineffective assistance of counsel at retrospective competency hearing. | 96-113 | 29-38 | | ✔ | | |
| 4 | Duncan was incompetent to represent himself. | 114-16 | 36-38 | ✔ | ✔ | | ✔ |
| 5 | The trial court's decision to permit Duncan to represent himself was fundamentally erroneous regardless of competence. | 116-17 | 38-41 | ✔ | | | ✔ |
| 6 | Trial counsel were ineffective for failing to request change of venue and voir dire. | 118-20 | 41-47 | | | | |

10

| 7 | The trial court erroneously admitted future dangerousness evidence. | 120-21 | 47-51 | ✓ | | ✓ | | ✓ |
|---|---|---|---|---|---|---|---|---|
| 8 | The trial court erroneously admitted videographic evidence. | 121-23 | 51-58 | ✓ | | ✓ | | |
| 9 | No offense underlying Duncan's conviction under § 924 is a crime of violence. | 76-86 | 58-60 & Doc. 49 | ✓ | | | | |
| 10 | Waiver of appeal was not clear and unequivocal, nor was it knowing, intelligent and voluntary. | 88-95 | 60-61 | ✓ | ✓ | | | ✓ |
| 11 | Cumulative error. | 124-26 | 61-62 | ✓ | | | | |
| 12 | The FDPA is unconstitutional. | 123 | 62-63 | ✓ | | | | |

## ARGUMENT

### I.  No certificate of appealability should issue for Duncan's procedurally defective claims.

Ignoring the limitations on collateral relief, Duncan seeks to appeal eight procedurally defaulted and otherwise defective claims, claims 4, 5, and 7-12. Having previously waived his direct appeal, Duncan defaulted these record-based issues. He cannot resurrect through this § 2255 action the direct

11

review he abandoned more than a decade ago. Among his defaulted contentions is Duncan's request that this Court reconsider his competence at various stages of the litigation. He cannot properly relitigate this issue following its extensive exploration in prior proceedings, however. Duncan also seeks to raise issues grounded in statutory authority, but a certificate of appealability ("COA") may issue only for constitutional claims. As to all these classes of defective contentions, the Court should deny a COA.

Statutory and decisional law restrict the availability of collateral relief. *United States v. Addonizio*, 442 U.S. 178, 184 (1979). Only a fundamental defect that resulted in a complete miscarriage of justice can support relief under § 2255. *Id.* at 185. Following the denial of such relief, a court may issue a COA only when a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Stated otherwise, the petitioner must establish that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)).

When a district court denies a § 2255 motion "on procedural grounds without reaching the merits of the underlying constitutional claims, [the COA]

12

determination has two components, 'one directed at the underlying constitutional claims and one directed at the district court's procedural holding.'" *Petrocelli v. Angelone*, 248 F.3d 877, 883 (9th Cir. 2001) (quoting *Slack*, 529 U.S. at 482). A petitioner must show that both constitutional and procedural components support a COA. *See Slack*, 529 U.S. at 484-85.

### A. Procedural Default

Because collateral review may not "do service for an appeal," the procedural default doctrine bars consideration of claims a § 2255 movant failed to raise on appeal. *United States v. Frady*, 456 U.S. 152, 165 (1982). By extension, defendants who waive their appeals procedurally default any issue under § 2255 that they could have presented on appeal. *United States v. Hammer*, 404 F. Supp. 2d. 676, 800 (M.D. Pa. 2005). The exception: claims of ineffective assistance of trial counsel, which should be raised in a collateral attack. *See United States v. Pirro*, 104 F.3d 297, 299 (9th Cir. 1997).

As the district court held, and this Court affirmed, Duncan validly and competently waived his appeal. *See* (*United States v. Duncan*, Appeal No. 13-99011, ECF No. 55-1 at 2- 5.) His waiver engendered two hearings before this Court, a retrospective competency evaluation, and two unsuccessful petitions for certiorari. In short, the judiciary undertook monumental effort to ensure appropriate respect for Duncan's personal decision to forgo direct review.

Duncan now seeks to upend the consequence of that waiver by smuggling before this Court, on collateral review, claims that should have been pressed in his forgone appeal.

### 1. Duncan abandoned eight of his claims.

In this case, Duncan could have, but did not, raise eight of his present claims on direct appeal:

- claim 2) that the trial court violated his statutory and constitutional rights when it met privately with attorney Peven;

- claim 4) that he was incompetent to represent himself;

- claim 5) that the trial court erred in permitting him to represent himself during a penalty phase trial;

- claim 7) that the trial court erroneously admitted future dangerousness evidence;

- claim 8) that the trial court erroneously admitted videographic evidence;

- claim 9) that neither predicate offense for his § 924 conviction qualifies as a crime of violence;

- claim 10) that he did not provide a clear, unequivocal, knowing, intelligent, and voluntary waiver of appeal;

- claim 11) that he experienced the prejudicial impact of cumulative error; and
- claim 12) that the FDPA is unconstitutional.[1]

---

[1] Given the patent procedural flaws in claims 7 and 10, the Government observes without extensive analysis that relief on those contentions would offend the bar on retroactive application of procedural

14

Of the eight defaulted issues, those concerning evidentiary rulings (claims 7 and 8), the indictment and guilty plea (claim 9),[2] and the constitutionality of a statute (claim 12), most plainly reside in the record and could have been advanced on direct appeal. *See, e.g.*, *Higgs v. United States*, 711 F. Supp. 2d 479, 545 (D. Md. 2010) (noting default of claims stemming from the admission of evidence). But the record would have just as easily permitted Duncan to appeal his other defaulted claims.

Duncan's statutory, due process, and Eighth Amendment claims regarding the private meeting between the trial court and attorney Peven (claim 2) rely on the same record that existed at the time he waived direct

---

rules. *See Teague v. Lane*, 489 U.S. 288, 310 (1989); *Reina-Rodriguez v. United States*, 655 F.3d 1182, 1187 (9th Cir. 2011). In both claims, Duncan fails to identify any existing authority for his positions and impliedly seeks application of novel standards of review. The Government discusses the more nuanced *Teague* errors in claims 1, 4 and 5 below.

[2] Duncan's assertion that *Davis* is retroactively applicable, *see* (Motion at 35, 90 n.11), does not excuse his procedural default. While a truly "novel" claim may constitute cause to excuse a procedural default, *see Reed v. Ross*, 468 U.S. 1, 16-17 (1984), a vagueness challenge to § 924(c)(3)'s residual clause does not meet that standard. The relevant inquiry is not "[w]hether subsequent legal developments have made counsel's task easier, but whether at the time of the default the claim was 'available' at all." *Smith v. Murray*, 477 U.S. 527, 537 (1986). Justice Scalia had contended since 2007 that the residual clause was unconstitutionally vague. *See James v. United States*, 550 U.S. 192, 230-231 & n.7 (2007) (Scalia, J., dissenting). Moreover, the foundational principle undergirding the residual clause cases including *Davis*—that vague criminal laws violate due process—has been on the books for nearly a century. *See, e.g.*, *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926).

15

appeal. That record includes an ex parte declaration, the defense's motion to clarify, and the trial court's denial thereof. *See* (Sealed CR Dkts. 68, 179, 185.) These records provided an adequate basis to advance the underlying claims in his, ultimately abandoned, appeal.

Moreover, the trial court conducted an on-the-record hearing that would have allowed direct review of Duncan's competence to represent himself (claim 4). During prior appellate proceedings in this case, Duncan's standby counsel challenged the knowing, voluntary and intelligent nature of his appellate waiver, an issue this Court apparently declined to address because it exceeded the permissible scope of the attorneys' standing. *Compare* (*United States v. Duncan*, Appeal No. 08-99031, ECF No. 47-1 at 57-76 and *United States v. Duncan*, Appeal No. 13-99011, ECF No. 17-1 at 109-17); *with United States v. Duncan*, 643 F.3d 1242 (9th Cir. 2011) and (*United States v. Duncan*, Appeal No. 13-99011, ECF No. 55-1.) Still, standby counsel's actions should estop any argument that Duncan himself could not have raised the issue on appeal. The related question of Duncan's right to represent himself during a penalty phase proceeding (claim 5) constitutes a pure legal question also amenable to appeal. And, of course, Duncan could have asserted cumulative error (claim 11) had he pursued a direct appeal.

16

Though Duncan asserted his record-based claims to the district court, the court expressly applied the procedural default doctrine to only one, claim 8—the allegation that the trial court improperly admitted future dangerousness evidence. *See* (CV Dkt. 43 at 49.) The court recognized in passing that Duncan had likely defaulted other claims. *See* (*id*. at 8 ("Duncan's competent and valid waiver of appeal likely precludes many of the claims and/or arguments made in the § 2255 Petition").)

Duncan's defaults, latent or otherwise, should foreclose appellate review of issues he could have raised on direct appeal. This Court may affirm a judgment for any reason supported by the record. *Travelers Prop. Cas. Co. of Am. v. ConocoPhillips Co.*, 546 F.3d 1142, 1145 (9th Cir. 2008). Its latitude in that regard applies in criminal cases and even in those involving the death penalty. *See, e.g.*, *United States v. Ortega-Ascanio*, 376 F.3d 879, 885 (9th Cir. 2004); *McClain v. Calderon*, 134 F.3d 1383, 1384 n.3 (9th Cir. 1998) (quoting *Helvering v. Gowran*, 302 U.S. 238, 245 (1937), "[I]f the decision below is correct, it must be affirmed, although the lower court relied upon a wrong ground or gave a wrong reason"), *overruled on other grounds as recognized in Coleman v. Calderon*, 210 F.3d 1047, 1049 n.1 (9th Cir. 2000).

When, as occurred here, the district court rejects the merits of a claim without evaluating these threshold procedural default issues, this Court should

17

ask whether reasonable jurists would debate reliance on the default *and* on the rejection of the merits. Indeed, the converse rule applies under Supreme Court authority: When a defendant seeks a COA based on a finding of default, he must demonstrate that reasonable jurists would debate not just the procedural ruling, but also the claim's merits. *See Welch v. United States*, 136 S. Ct. 1257, 1270 (2016) (Thomas, J., dissenting) (citing *Slack*, 529 U.S. at 484). Reliance on default is especially apt in this case, given the immense resources expended to confirm the validity of Duncan's appellate waiver and the disregard with which he now attempts to subvert the consequences of the waiver.

### 2. Duncan cannot demonstrate "cause" to excuse default.

Courts may adjudicate procedurally defaulted claims in two instances. First, they may do so when a movant demonstrates "he was 'actually innocent' of . . . the crime for which he was indicted." *United States v. Guess*, 203 F.3d 1143, 1145 (9th Cir. 2000). Second, they may do so if the petitioner establishes cause and prejudice. *Id.* To demonstrate cause, a movant must show that "some objective factor external to the defense" impeded compliance with a procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). A showing of counsel's inaction does not satisfy the cause standard, unless it amounted to constitutional ineffectiveness. *Id.* And a movant who demonstrates cause must also establish prejudice by identifying errors that "worked to his actual

18

and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170.

Neither exception to the procedural bar doctrine excuses Duncan's defaults. He does not assert actual innocence, having consistently acknowledged his guilt in the past. Instead, Duncan attempts to establish "cause" by asserting he did not knowingly, voluntarily, and intelligently waive his direct appeal, but instead abandoned it due to the ineffective assistance of trial counsel. *See* (Motion at 87.) But the validity of Duncan's appellate waiver has been decided by the district court, affirmed by this Court, and rejected for review by the Supreme Court. It is law of the case. As a § 2255 litigant, Duncan may not relitigate that issue absent changed circumstances of fact or law. *See Odom v. United States*, 455 F.2d 159, 160 (9th Cir. 1972) (per curiam); *see also United States v. Jingles*, 702 F.3d 494, 498 (9th Cir. 2012) (construing the relitigation bar within the law of the case doctrine). No change of circumstances has occurred, and this Court should not permit Duncan to rely on conclusory denials of voluntariness as a substitute for "cause."

The same legal conclusions and factual findings that cemented the validity of Duncan's appellate waiver should preclude his re-litigation of two related (and defaulted) contentions, claims 3 and 4—that he lacked competence to plead guilty and to represent himself. Recognizing that he fully

19

litigated his competence at the time of his appellate waiver, Duncan implies that his mental state could have varied over time. *See* (Motion at 97.) He makes no effort to show any variation, however. Nor could he: as discussed below, the evidence from the competency hearing established that his mental state and belief system had remained constant throughout the proceedings.

Duncan pleaded guilty in December 2007 and competently waived his direct appeal 11 months later, in November 2008. *See* (*United States v. Duncan*, Appeal No. 13-99011, ECF No. 55-1 at 2- 5.) At those times, a single competency standard applied: "whether the defendant has a 'rational understanding' of the proceedings."[3] *See Godinez v. Moran*, 509 U.S. 389, 397-98 (1993) (citing *Dusky v. United States*, 362 U.S. 402 (1960)). When Duncan

---

[3]     During Duncan's trial, the Supreme Court decided *Indiana v. Edwards*, 554 U.S. 164, 176-77 (2008). A recent decision by this Court states that *Edwards* provided a higher standard of competence for defendants seeking self-representation. *See Dixon v. Ryan*, 932 F.3d 789, 804 (9th Cir. 2019) (noting "the standard a court must apply" but deferring to a state court competency finding); *but see United States v. Ferguson*, 560 F.3d 1060, 1070 n.6 (9th Cir. 2009) (holding *Edwards* does not "*compel*" the denial of self-representation and "*permits* a trial court to require representation"). Assuming *Edwards* announced a mandatory rule, Duncan abandoned its application along with his appeal, and he cannot take retroactive advantage of it under § 2255. *See Panetti v. Stephens*, 727 F.3d 398, 413 (5th Cir. 2013). In any event, the prior proceedings provided pellucid evidence of Duncan's competence under any standard, obviating any concern that he merited special consideration under *Edwards*. *See United States v. Duncan*, 599 F. App'x 679 (9th Cir. 2015) (observing Duncan would have satisfied the competency standard under *Rumbaugh v. Procunier*, 753 F.2d 395 (5th Cir. 1985)).

elected to proceed pro se, the court had him evaluated by experts who affirmed his competence. Although this Court found that assurance inadequate, it remedied the failure by ordering a retrospective competency evaluation, which, in turn, adduced evidence from every important juncture in the federal proceedings. (CR Dkt. 843 at 13, 22; CR Dkt, 811, Vol. 5 at 1106-09, 1126-29, 1226-29; CR Dkt. 816, Vol. 10 at 2415-18, 2507-10, 2587-98; CR Dkt. 818, Vol. 12 at 2996-99, 3008-11, 3016-27; CR Dkt. 813, Vol. 7 at 1713-14, 1731-32; CR Dkt. 820, Vol. 14 at 3608-23.) This evidence established consistency in Duncan's belief system from before indictment until after sentencing, a point the defense experts emphasized. *See* (CR Dkt. 818, Vol. 12 at 2996-99, 3008-11, 3026-27 (Dr. Merikangis); CR Dkt. 843 at 13 (Dr. Engle) and 22 (Dr. Gur), CR Dkt. 811, Vol. 5 at 1106-09, 1126-29, 1226-29 (Dr. Kirkish); CR Dkt. 816, Vol. 10 at 2415-18, 2507-10, 2587-98 (state defense attorneys and mitigation experts discussing 2005 behavior); CR Dkt. 813, Vol. 7 at 1713-14, 1731-32 (defense specialist Freedman); CR Dkt. 820, Vol. 14 at 3608-23 (Dr. Gur interview in 2008).) Consistent with that evidence, Duncan's own counsel repeatedly assured the trial court that they knew of no reason to bar his guilty plea. (CR Dkt. 204 at 25; CR Dkt. 843 at 51 & n.24; CR Dkt. 827, Vol. 21 at 5448, 5562.) The evidence supported the trial court's conclusion that Duncan "had a complete understanding and knowledge of the proceedings and his

21

options." (CR Dkt. 843 at 49.) The record overwhelmingly establishes that Duncan's competence did not vary before or after his appellate waiver. Accordingly, this Court's finding that Duncan possessed the competence to waive appeal should apply to resolve concerns about his competence earlier in proceedings.

Duncan's effort to demonstrate cause is premised on a phantasm of supposed incompetence at other junctures in the criminal trial. The allegation finds no basis in fact and was soundly rejected in earlier litigation.

### 3. Duncan's ineffective assistance allegation fails to excuse default.

To salvage a showing of cause as to his eight defaulted claims, Duncan insists his counsel's supposed deficiencies precipitated his decision to waive appeal. (Motion at 87.) He cannot sustain that position as a matter of fact or law. Duncan asserted his right to represent himself on the second day of voir dire and proceeded pro se through verdict and the waiver of his appeal. (*United States v. Duncan*, Appeal No. 08-99031, ECF No. 86-1 at 9244.) A defendant, like Duncan, who validly waives counsel may not thereafter assert ineffective assistance stemming from his own performance. *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975); *Cook v. Schriro*, 538 F.3d 1000, 1029 (9th Cir. 2008). When Duncan waived his appeal, he expressly acknowledged that he did so against the advice of *standby* counsel. *See* (Sealed CR Dkt. 637 at 12-13.)

22

Duncan cannot establish cause by pointing to his own actions much less those of the attorneys he abandoned and later expressly chose to disregard.

Moreover, Duncan cannot demonstrate any plausible nexus between his trial attorneys' performance and his decisions to plead guilty, proceed pro se, or waive appeal. The only connection Duncan might draw between counsel's performance and the validity of his appellate waiver stems from his ineffective assistance claims at the retrospective competency hearing. But Duncan received exceptional representation at that hearing. *See* Section II, B. In short, Duncan's assertions of ineffectiveness do not excuse his procedural default. *See United States v. Ratigan*, 351 F.3d 957, 965 (9th Cir. 2003) (holding a meritless claim of ineffective counsel would not excuse default).

### B. Statutory Claims

Duncan seeks to appeal the district court's rejection of his claims under the Court Reporter's Act (28 U.S.C. § 753)—claim 2—and the evidentiary provisions of the FDPA (18 U.S.C. § 3593(c))—claims 7 and 8. *See* (Motion 75-76, 120-23.) Those issues, however, fall outside the ambit of § 2255. A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a *constitutional* right." 28 U.S.C. § 2253(c)(2) (emphasis added). An alleged violation of lesser authority will not suffice. *See Medellin v. Dretke*, 544 U.S. 660, 666 (2005) (holding a COA would not issue for an alleged treaty

violation); *United States v. Mikels*, 236 F.3d 550, 551 (9th Cir. 2001) (finding a lack of jurisdiction over the appeal of statutory claims). As a result, Duncan cannot obtain review of these statutory claims, regardless of whether reasonable jurists might debate the decisions below.

## II. No COA should issue on Duncan's ineffective assistance of counsel claims.

In claims 1, 2, and 6, Duncan asserts ineffective assistance of counsel during trial and during the retrospective competency hearing. His allegations fail with respect to both proceedings.

### A. Ineffective assistance claims involving trial and sentencing

Given Duncan's decisions to confess, plead guilty, represent himself, and waive his direct appeal, Duncan now struggles to promote the notion that his expert trial counsel's performance and its supposed deficiencies, had any relevance to his conduct and the outcome of the proceedings. Counsel expended considerable time and effort preparing the case and trying to convince Duncan to pursue their strategies, but to no avail. Duncan remained steadfast in his desire to plead guilty and forgo the presentation of mitigation evidence. Because Duncan cannot show that further effort by counsel would have changed his decisions, there is simply no way he can show prejudice. That alone disposes of his claims. *See Williams v. Calderon,* 52 F.3d 1465, 1470 n.3 (9th Cir. 1995) (observing that the absence of prejudice was clear, and that

24

a court does well in such circumstances "to decline the enterprise" of analyzing *Strickland*'s first prong).  In the interest of thoroughness, however, both *Strickland* prongs are addressed below.  Reasonable jurists would not debate the merits of either prong.  *Slack*, 529 U.S. at 484.

### 1.  Duncan cannot show prejudice from the alleged deficiencies.

Overwhelming evidence demonstrated Duncan's guilt, including his full and repeated confessions as well as his own recordings and documentation of the horrific crimes.  This proof makes a different outcome to the proceedings unlikely, irrespective of any action counsel might have taken.  As the district court found, however, "from the beginning of this case, Duncan repeatedly expressed his desire to plead guilty despite his attorneys' efforts to persuade him otherwise."  (CV Dkt. 43 at 20.)  His resolve further undermines any assertion that the adequacy of counsel's preparations influenced his decision or otherwise prejudiced the outcome.  (*Id.*); *see Strickland v. Washington*, 466 U.S. 668, 694 (1984); *Howard v. Clark*, 608 F.3d 563, 568 (9th Cir. 2010).

After the sentencing phase commenced, Duncan elected to proceed pro se, but not because of inadequate preparation by counsel.  To the contrary, he fired his lawyers—against their counsel—*because* they had prepared extensively to present mitigation evidence that he found personally odious.

25

Duncan long resisted the presentation of mitigation evidence. He did not wish to be portrayed as mentally ill. *See* (CV Dkt. 33-1, Sealed Gov't Attach. 3 at 12, 13, 62, 64, 89; CR Dkt. 824, Vol. 18 at 4677.) He also knew that one of his attorneys, Judy Clarke, had successfully forced a mitigation case on Ted Kaczynski because Kaczynski had asserted his right to self-representation too late. (CV Dkt. 33-1, Sealed Gov't Attach. 3 at 31, 89.) To avoid a similar fate, Duncan ensured that he would timely assert his right by requiring counsel to tell him when it would become too late to do so. *See* (CR Dkt. 822, Vol. 16 at 4189-90 (writing of a likelihood he would go pro se, "They tell me that I can request to represent myself at the very last moment . . . so there is no need to do it now."); CR Dkt. 823, Vol. 17 at 4362.) He successfully asserted this right after counsel acknowledged their intent to present mental-health mitigation evidence, reneged on an agreement not to force the surviving victim to testify, and otherwise "thwart[ed]" his wishes. (CV Dkt. 33-1, Sealed Gov't Attach. 3 at 120; CR Dkt. 825, Vol. 19 at 5014); *see* (CR Dkt. 193 at 2; Sealed CR Dkt. 625, Vol. 2 at 17-18; CR Dkt. 398); (CR Dkt. 823, Vol. 17 at 4361; CR Dkt. 825, Vol. 19 at 5014.) He interrupted his counsel's representation during voir dire and took it over himself.

Counsel's preparations and advice may have prompted Duncan's decision to represent himself, but it did not otherwise shape the presentation of

26

evidence or argument at trial. Duncan cannot reverse engineer some reasonably debatable failure by his attorneys that influenced, much less prejudiced, his case. He asserted his wishes and exercised his right to make decisions. And when he worried that he would no longer be able to do that through counsel, he seized control and assumed his representation.

The results of the retrospective competency hearing belie any suggestion that further preparation or investigation by counsel would have led to Duncan being declared incompetent before the penalty phase (thereby allowing counsel to present mitigation evidence) or to convincing the Government to forgo the death penalty (thereby allowing counsel to plea bargain more successfully). As discussed in Section I, A, 2, above, the district court found Duncan competent to waive his direct appeal after a lengthy hearing. Moreover, Duncan's own experts agreed that his mental state had been consistent throughout the proceedings and even before. Any claim that an earlier hearing would have resulted in a finding of incompetence is thus speculative.

The same conclusion holds with respect to venue: The district court correctly concluded that counsel was not deficient for declining to file a futile motion. (CV Dkt. 43 at 46-47 (citing *Rupe v. Wood*, 93 F.3d 1434, 1444-45 (9th Cir. 1996).) The case had received nationwide attention while authorities searched for the young victims for nearly seven weeks. *See United States v.*

*Haldeman*, 559 F.2d 31, 63-64 (D.C. Cir. 1976) (noting "doubtful value" of any change of venue in a case that had received national attention). And, in view of this publicity, the court had taken action to ensure that the jury was unbiased, and Duncan himself participated in voir dire. Furthermore, Duncan acknowledged in his § 2255 motion that he cannot show actual prejudice, (CV Dkt. 4 at 146 n.15), and his claim is not one that satisfies the strict standard for presuming prejudice. *See United States v. Sherwood*, 98 F.3d 402, 410 (9th Cir. 1996), *as amended* (Oct. 28, 1996).

Duncan cannot show that reasonable jurists would debate the lack of prejudice from his trial counsel's alleged shortcomings. *Slack*, 529 U.S. at 484. No reasonable probability exists of a different result. *See Strickland*, 466 U.S. at 694; *Howard*, 608 F.3d at 568. A COA should be denied on claims 1, 2, and 6.

### 2. Duncan cannot show structural error and avoid the prejudice requirement.

In an effort to excuse the prejudice requirement, Duncan asserts structural error in his claims of ineffective assistance.[4] *See* (Motion at 60-62.) But the Supreme Court has limited that doctrine to three situations, none of

---

[4] Duncan could alternatively attempt to show that counsel's errors were so profound as to undermine confidence in the result *and* that prejudice resulted. *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1909-11 (2017); (CV Dkt. 43 at 19.) His inability to conjure any showing of prejudice forecloses that line of argument as well, however.

28

which occurred here: (1) situations involving the "complete denial of counsel"; (2) situations in which counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing"; and (3) situations in which "the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate." *United States v. Cronic*, 466 U.S. 648, 659 (1984); *see Bell v. Cone,* 535 U.S. 685, 695-96 (2002) (Stevens, J., dissenting) (identifying the three circumstances permitting a finding of ineffectiveness absent prejudice).

Duncan attempts to shoehorn his case into the structural error doctrine, pointing to his supposed incompetence and to one attorney's personal issues. *See* (Motion at 60-62.) Both attempts fail at an elemental level. First, Duncan has never shown that he lacked competence at any stage of the proceedings. As discussed in Section I, A, 2 above, the Court found that he was competent to waive appeal, and that is the law of the case. Moreover, his own experts testified that his mental state had remained consistent throughout the proceedings and even before them. Any suggestion that the failure to seek or obtain an earlier hearing would have resulted in a finding of incompetence is thus far-fetched.

Second, Duncan also fails to transmogrify into structural error a brief ex parte discussion in which his attorney, Mr. Peven, first told the court about his

personal issues.  For one thing, this discussion was no critical stage.  No "failure to pursue strategies or remedies" resulted from the conversation with Mr. Peven or its lack of recording, and no "loss of significant rights" occurred either.  *Hovey v. Ayers*, 458 F.3d 892, 901-02 (9th Cir. 2006) (internal quotation marks omitted) (describing the requirements of a "critical stage" and concluding that a hearing regarding counsel's competency to represent a defendant was not a critical stage).  As Mr. Peven documented, *see* (Sealed CR Dkt. 68), this was a short conversation regarding his personal problems and inability to carry on as planned, conducted pursuant to the court's inherent authority to regulate the conduct of attorneys who practice before it.  *See, e.g.*, *id.*; *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 766 (1980).  Moreover, the court appointed new lead counsel.  (CR Dkt. 72.) The reconstituted defense team then corrected any possible misunderstanding regarding their preparation under Mr. Peven's supervision in their motion for a second continuance and supporting documentation.  (Sealed CR Dkt. 69, 74; Sealed CR Dkts. 75-77, 80.)  In short, the appointment of new counsel and their subsequent actions avoided the loss of any rights, much less any significant rights.  The conversation with Mr. Peven was thus not a critical stage, and no prong of *Cronic* applies.  Moreover, any extension of the *Cronic* doctrine would violate *Teague*.  *See Reina-Rodriguez*, 655 F.3d at 1187.

### 3. Alternatively, counsel's performance was not deficient.

In claims 1, 2, and 6, Duncan alleges problems within the defense team during and in the wake of Mr. Peven's tenure:  an alleged failure to advise Duncan adequately regarding his guilty plea, to investigate and prepare an adequate defense, to move for a change of venue, and to represent him when the district court conversed with Mr. Peven about his personal problems.  The facts undermine each of these assertions. Counsel demonstrated diligence in preparing for trial and sentencing,[5] they conferred more than 80 times with

---

[5] The defense amassed substantial mitigation evidence, including a history of familial sexual abuse.  *See, e.g.*, (CV Dkt. 33-1, Sealed Gov't Attach. 5 at 2 (noting incest and the molestation of Duncan and his brother).)  Based on information gleaned in interviews with Duncan, counsel gathered material that corroborated descriptions of incest, childhood abuse, custodial sexual abuse, and injuries that may have caused brain damage.  *See* (CR Dkt. 827, Vol. 21 at 5517 (acknowledging Duncan assisted the investigation by signing releases); CR Dkt. 819, Vol. 13 at 3360-65, 3373; CR Dkt. 817, Vol. 11 at 2820; CV Dkt. 33-1, Sealed Gov't Attach. 3 at 13, 36, 46, 52, 69, 72, 73, 76-77); *see also* (CV Dkt. 2-17, Exh. 101 at 880 (referencing interviews of Cheri Duncan, Duncan's sister).)  Counsel retained experts to present the evidence.  *See, e.g.*, (CR Dkt. 819, Vol. 13 at 3364-65, 3376 (Davis explaining her investigation of corroborating information, which was conveyed to experts).)  They also provided the material to mental health experts.  *See* (CR Dkt. 819, Vol. 13 at 3376 (mitigation specialist testifying she "conveyed" mitigation information to "a variety of neuropsych experts, trauma and abuse experts"); CR Dkt. 818, Vol. 12 at 3088, 3091 (Dr. Merikangas discussing injuries from shovel and car accident); CR Dkt. 818, Vol. 12 at 3102 (Dr. Merikangas concluding genetics did not cause Duncan's mental illness)); *see also* (CR Dkt. 817, Vol. 11 at 2677 (Dr. Woods evaluating Duncan's medical records related to a head injury)); *see generally* (CV Dkt. 33-1, Sealed Gov't Attach. 10 at EXPMAT000836-43 (Dr. Gur's opinion based on neuroimaging results received from counsel).)  The defense was thus prepared to present ample evidence of Duncan's traumatic

Duncan, *see* (CV Dkt. 33-1, Sealed Gov't Attach. 3), and they represented to the district court at the change-of-plea hearing that they had fulfilled their duties to their client, as did Duncan. *See* (CR Dkt. 204 at 6, 25; CR Dkt. 823, Vol. 17 at 4352, 4395-97; CR Dkt. 822, Vol. 16 at 4163-65, 4184 (Larranaga); CR Dkt. 827, Vol. 21 at 5443-48 (Clarke).)[6]

In addition, an intervening cause interrupts any connection between counsel's actions and their allegedly deficient performance. In October 2007, counsel sought a second continuance. (CR Dkt. 74.) In their filings, they claimed inadequate preparation, the failure to file unspecified motions (presumably a motion for a change of venue), and a need for additional time, all of which they attributed to Mr. Peven. *See* (Sealed CR Dkt. 75-77, 80.) One month later, after a hearing, the court denied their motion. (CR Dkt. 85.) The district court could have remedied all the supposed problems now asserted, however. Thus, Duncan's argument really implicates the district court's exercise of discretion not his counsel's performance.

Duncan could have—but did not—challenge the district court's exercise of its discretion on direct appeal, however. He cannot now show cause for that

life and its impact on his mental health. *See* (CV Dkt. 33-1, Sealed Gov't Attach. 3 at 120.)

[6] Discussion of the alleged failures with respect to the Peven conversation and the venue motion above include reasons that counsel's performance was not deficient.

32

(and any other) default because he himself waived his right to appeal. And he cannot establish prejudice for the procedural default because he cannot demonstrate any nexus between counsel's actions and his decisions, as discussed above. Thus, Duncan's claim of deficient performance by counsel at trial fails for multiple, alternative reasons.

## B. Ineffective assistance claims involving the retrospective competency hearing.

Duncan briefly asserts, in claim 3, that it is debatable whether counsel were ineffective at the retrospective competency hearing. (Motion at 122-24.) The record reveals no reasonable basis for debate, however.

First, Duncan premises his argument, in part, on the incorrect assertion that counsel "presented no expert opinion testimony to explain Duncan's unusual presentation." *See* (Motion at 124.) The district court found that counsel had presented precisely such testimony, describing "testimony, evidence, and argument throughout the retrospective competency hearing concerning Duncan's atypical psychiatric and psychological symptomatology as [the defense experts'] basis for finding him incompetent." (CV Dkt. 43 at 35 (noting that the court weighed and considered the evidence).) Duncan cites nothing to challenge that finding, nor could he—the record confirms it.

The experts employed by both the defense and the court agreed that Duncan's competency turned on the question of whether he was delusional.

33

That question, in turn, centered on his "unusual" ideas—what the defense now calls his "unusual presentation"—which included his stated beliefs about "the Truth" and the Epiphany that he claimed to have experienced. (CR Dkt. 843 at 8-9 (noting the varied nature of the experts' conclusions, but also their common focus on "ideology," and especially on "what the Defendant called 'the Truth' and oneness as well as an Epiphany that the Defendant stated he experienced on the mountain"); CR Dkt. 811, Vol. 5 at 1110-13, 1134-41 (Dr. Kirkish describing the "central question" regarding competence); CR Dkt. 843 at 16 (noting that defense expert, Dr. Amador, differed from Court-appointed expert, Dr. Low, based on their view of what constituted delusions); CR Dkt. 815, Vol. 9 at 2316-17 (state defense counsel describing the central issue in the competence determination—"whether Duncan is delusional" and its impact in court); CR Dkt. 826, Vol. 20 at 5077 (Dr. Kalechstein opining that Duncan's primary symptoms were "delusions, including paranoid delusions").)

Determining whether Duncan's stated ideas evidenced delusions or merely highly idiosyncratic beliefs was the "thorny issue" to which Dr. Kirkish referred. (CR Dkt. 811, Vol. 5 at 1169.) That distinction constituted the point of departure between the defense and court-appointed experts. (CR Dkt. 826, Vol. 20 at 5098-99 (describing different conclusions based on the same observed behavior).) Moreover, it provided the fulcrum for the court's findings

regarding Duncan's competence. *See Duncan*, 599 F. App'x at 680 ("The court also cited testimony supporting its conclusion that Defendant's 'epiphany' was neither a delusion nor a hallucination"). Thus, Duncan's "unusual presentation," was central to his experts' analysis.

Duncan also argues that counsel deficiently failed to have the defense experts "consider the testimony of Duncan's sister." (Motion at 112-13.) This argument is misleading. Defense experts were well aware of the abuse and dysfunction in Duncan's family, to which his sister testified, as well as of the abuse that he endured in prison. (CR 815 at 2365-80; CR 816 at 2384-97; CR 819 at 3366, 3433-34, 3443-46) (detailing defense knowledge of family "disfunction, including emotional, physical, and sexual abuse by his mother, since before the capital sentencing hearing); and citing (CR Dkt. 799 at Def. Exhs. A24 and B60) (prison records).) Duncan's sister's testimony merely "confirmed what the defense and its experts already knew" from countless interviews with family members and from prison records. *See* (CV Dkt. 43 at 33-34.) The fact that the defense experts did not specifically mention the sister's testimony is therefore irrelevant. Counsel ensured that the experts had the probative information, and the experts used it to explain the "etiology of [Duncan's] impairment" at the hearing. (CR Dkt. 818, Vol. 12 at 3026-27.)

35

Finally, Duncan cannot substantiate the claim that counsel acted ineffectively when they allegedly engaged in unintentional "discovery violations" that resulted in the exclusion of expert defense opinions, especially Dr. Beaver's. Not disclosing Dr. Beaver's report, however, was not error. *Contra* (Motion at 122-23.) Dr. Beaver never created a report. Thus, no report could have been disclosed. (CR Dkt. 843 at 25 n.19; CR Dkt. 819, Vol. 13 at 3285-86.) Certainly, the doctor could have created a retrospective report documenting his observations and conclusions eight years previous, but there was no need. Other experts amply addressed Duncan's competency and a description of Duncan's "'rambling and tangential' thoughts during a 2005 interview." *See* (Motion at 123.) In addition, through the testimony of Dr. Merikangis and five other witnesses, the defense had established that Duncan's behavior was consistent from before 2005 through 2012. *See* (CR Dkt. 818, Vol. 12 at 2996-99, 3008-11, 3026-27 (Dr. Merikangis); CR Dkt. 843 at 13 (Dr. Engle) and 22 (Dr. Gur); CR Dkt. 811, Vol. 5 at 1106-09, 1126-29, 1226-29 (Dr. Kirkish); CR Dkt. 816, Vol. 10 at 2415-18, 2507-10, 2587-98 (state defense attorneys and mitigation experts discussing 2005 behavior); CR Dkt. 813, Vol. 7 at 1713-14, 1731-32 (defense specialist Freedman); CR Dkt. 820, Vol. 14 at

36

3608-23 (Dr. Gur interview in 2008).) The absence of Dr. Beaver's recounting of consistent behavior in 2005 was therefore inconsequential.[7]

The other two items of "excluded" testimony—a critique of prosecution experts by Dr. First and testimony regarding materials Dr. Amador reviewed after his report—are less substantial. As for Dr. First, there was no lack of critique of the court-appointed experts, their methods and their conclusions at the hearing. The dispute between the court-appointed and defense-retained experts, was a central issue. *See, e.g.*, (CR Dkt. 843 at 10, 11-31 (reviewing experts' opinions and credibility); CR Dkt. 822 at 4118-23 (Dr. Amador opining that Government expert, Dr. Low, had failed properly to discern the significance of facts she had documented).) There was thus no need for Dr. First, specifically, to offer his critique. *Contra* (Motion at 112). Moreover, Duncan identifies nothing unique that Dr. First could have provided.

Duncan likewise fails to identify the import of Dr. Amador's testimony "about materials he reviewed after submitting his report" in 2008. (Motion at 112; CR Dkt. 827, Vol. 21 at 5525-26.) Other defense experts, including Drs.

---

[7] It is also worth noting that the defense succeeded in offering Dr. Beaver's foundational testimony regarding the neuropsychological testing he performed, which underlay and supported other expert opinions. *See* (CR Dkt. 843 at 25 n.19);(CR Dkt. 820, Vol. 14 at 3530, 3564-65, 3567-68; CR Dkt. 821, Vol. 15 at 3793-94, 3819-20; CR Dkt. 828, Vol. 22 at 5810-11, 5908, 5913.)

Merikangas and Kalechstein, testified about the more comprehensive materials they had reviewed during the same period. *See* (CR. Dkt. 826, Vol. 20 at 5130, CR Dkt. 818, Vol. 12 at 2996-99, 3008-11, 3016-27.) Given the broad basis of that evidence, Duncan's assertion that Dr. Amador's testimony would have added anything of value amounts to rank speculation. *See* (Motion at 112.)

In short, Duncan's argument ignores the evidence presented on his behalf at the retrospective competency hearing. Defense counsel successfully advanced their key points through multiple witnesses. As a consequence, jurists could not reasonably debate the district court's findings that no ineffective assistance occurred.

## III. No COA should issue on claim 5 for an additional reason: Reasonable jurists would not debate the district court's decision that it properly permitted Duncan to represent himself.

Duncan's claim that the trial court exceeded its constitutional authority when it permitted him to represent himself during the penalty phase of his capital trial, *see* (Motion at 116-17), is procedurally barred, as discussed above. *See* Section I, A, 1. But the claim's merits also inspire no reasonable debate.

The Sixth Amendment guarantees individuals the right to defend themselves. "The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails." *Faretta*, 422 U.S. at 819-20. Though a decision to abandon counsel may undermine a defendant's own

interests, the "choice must be honored out of 'that respect for the individual which is the lifeblood of the law.'" *Id.* at 834 (quoting *Illinois v. Allen*, 397 U.S. 337, 350-51 (Brennan, J., concurring)). The right extends to the penalty phase of a capital case. *See United States v. Davis*, 285 F.3d 378, 381-82 (5th Cir. 2002); *United States v. Roof*, 225 F. Supp. 3d 394, 398-402 (D.S.C. 2016).

Duncan attempts to avoid the reach of these decisions by arguing that a capital defendant in the penalty phase of trial has already suffered conviction and thereby lost a critical measure of his autonomy under the Sixth Amendment. (Motion at 127-28.) But the effort to equate a capital, penalty-phase defendant to a run-of-the-mill convicted defendant ignores the fact that the government must use the penalty phase to prove eligibility factors—tantamount to elements of a crime—as a prerequisite to the jury's consideration of the death penalty. *See United States v. Fell*, 531 F.3d 197, 237 (2d Cir. 2008) (citing *Ring v. Arizona*, 536 U.S. 584, 609 (2002)); *United States v. Higgs*, 353 F.3d 281, 298 (4th Cir. 2003) (holding that "intent and aggravating factors . . . are the functional equivalent of elements of the capital offenses"). Accordingly, a defendant in a penalty-phase proceeding has not yet suffered a complete conviction for the criminal acts that expose him to capital punishment. The weight of this authority forecloses the possibility that reasonable jurists might debate the denial of relief.

39

Duncan's flawed logic would also require a novel rule of criminal procedure—one that bars self-representation during penalty-phase proceedings of capital trials. Federal courts may not rely on retroactively applicable procedural rules to grant collateral relief. *Teague*, 489 U.S. at 310. Given the overwhelming weight of authority recognizing a capital defendant's right to self-representation, Duncan's interpretation of the *Faretta* rule would certainly constitute "new" authority under *Teague* when his conviction became final. *Cf. Beard v. Banks*, 542 U.S. 406, 411 (2004). Moreover, the exceptionally limited reach of the proposed rule forecloses any reasonable argument that it constitutes a "watershed" rule that evades the reach of *Teague*. *Id.* at 417.

Duncan's novel theory—that he had no constitutional right to represent himself during the penalty-phase of his trial—would offend the bar on retroactive authority. Accordingly, no COA should issue on the claim.

40

# CONCLUSION

This Court should deny the requested COA.


Respectfully submitted this 15th day of January, 2021.

> BART M. DAVIS
> United States Attorney
> District of Idaho
> By
>
>
> s/ *Syrena C. Hargrove*
> SYRENA C. HARGROVE
> Assistant United States Attorney
>
>
> DAVID P. BURNS
> Acting Assistant Attorney General
> By
>
>
> s/ *Jeffrey B. Kahan*
> JEFFREY B. KAHAN
> Trial Attorney

41

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* [http://www.ca9.uscourts.gov/forms/form08instructions.pdf](http://www.ca9.uscourts.gov/forms/form08instructions.pdf)

**9th Cir. Case Number(s)** 20-99001

I am the attorney or self-represented party.

**This brief contains** 9,239 **words,** excluding the items exempted by Fed.

R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P.

32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[x] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ Syrena C. Hargrove      **Date** January 15, 2021
(*use "*s/[typed name]*" to sign electronically-filed document*)

42