**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
              *Plaintiff-Appellee,*

       v.

JOSEPH EDWARD DUNCAN, III,
              *Defendant-Appellant.*

No. 08-99031

D.C. No.
2:07-cr-00023-EJL-1

OPINION

Appeal from the United States District Court
for the District of Idaho
Edward J. Lodge, District Judge, Presiding

Argued and Submitted
January 12, 2011—Seattle, Washington

Filed July 11, 2011

Before: Susan P. Graber, Raymond C. Fisher, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Graber

9239

Case: 08-99031, 07/15/2011, ID: 7824100, DktEntry: 30-5, Page 2 of 19

9242            UNITED STATES v. DUNCAN

---

## COUNSEL

Joseph Schlesinger, Assistant Federal Defender, Sacramento, California, for the defendant-appellant.

Wendy J. Olson and Syrena C. Hargrove, Assistant United States Attorneys, Boise, Idaho, for the plaintiff-appellee.

---

## OPINION

GRABER, Circuit Judge:

Defendant Joseph Edward Duncan, III, pleaded guilty to three capital charges and seven other charges in connection with the kidnapping, sexual abuse, and murder of D.G., a 9-year-old boy, and the kidnapping and sexual abuse of Sh.G., an 8-year-old girl. Defendant exercised his right to represent himself during his penalty phase hearing. His lawyers challenged his competence to do so, but the district court rejected that challenge without having held a hearing. Defendant received a death sentence.

Standby counsel filed a timely notice of appeal but, at a hearing, Defendant told the district court that he did not want to appeal. The district court accepted Defendant's waiver of appeal, ruling that it had been made competently. We nevertheless agreed to hear this appeal for the limited purpose of reviewing the district court's competency determinations. In the circumstances, we agree with standby counsel that a competency hearing was required. We therefore reverse and remand for a retrospective competency hearing.

I.  *Background*

In the early hours of May 16, 2005, Defendant drove to a secluded house in Coeur d'Alene, Idaho, intending to kidnap two of the children who lived there. Brenda G. was asleep inside, along with her three children—13-year-old Sl.G., 9-year-old D.G., and 8-year-old Sh.G.—and Brenda's boyfriend, Mark M. Defendant had surveilled the house and knew who was inside. He came prepared with a loaded sawed-off shotgun, a hammer, night-vision goggles, duct tape, and a package of zip ties. He wore a hat, a mask, and gloves.

Defendant entered the house through the unlocked back door. He found Brenda asleep in the living room. He awakened her at gunpoint. At Defendant's direction, Brenda took Defendant to each of the three bedrooms. One by one, Defendant collected the family members, assembled them face-down on the floor of the living room, and bound their arms and legs with zip ties and duct tape.

Defendant then took D.G. and Sh.G. into the back yard and lay them on the grass. He went back into the house to retrieve Sl.G. After leading Sl.G. into the back yard, Defendant hit him in the back of the head with the hammer several times until he fell to the ground and stopped moving. Defendant then went back into the house and killed Brenda and Mark, using the hammer, as they lay on the living room floor. Satisfied that his three victims were dead or nearly so, Defendant took D.G. and Sh.G. to his stolen rental car and drove them to a secluded area of the Lolo National Forest in Montana. There, Defendant set up camp.

Defendant held D.G. and Sh.G. at the campsite for almost seven weeks. He threatened to kill them with the shotgun if they tried to leave. During that time, Defendant repeatedly and savagely abused both children. He made video recordings of some of the abuse and stored the recordings on an electronic micro drive, which police later recovered. On or about

June 22, 2005, Defendant killed D.G. by shooting the boy with the shotgun.

On July 2, 2005, Defendant decided to take Sh.G. back to Idaho. When they reached Coeur d'Alene, Defendant took Sh.G. to a Denny's restaurant. A waitress and a customer each recognized Sh.G. and called the police. Police officers arrived, and they arrested Defendant.

In August 2005, the State of Idaho charged Defendant with three counts of first-degree murder and three counts of first-degree kidnapping for the murders of Mark M., Brenda G., and Sl.G. After Defendant reached a bargain with the prosecution, he pleaded guilty on all charges. The court sentenced Defendant to three consecutive life sentences on the kidnapping charges but, consistent with the terms of Defendant's plea bargain, the court deferred sentencing Defendant on the murder charges to await the outcome of this federal case. Idaho retains the right to seek the death penalty on the three murder convictions if these proceedings do not result in a valid death sentence.

In January 2007, a federal grand jury indicted Defendant on ten counts, all related to the kidnapping, rape, and abuse of the two children and the murder of D.G. The United States timely noticed its intent to seek the death penalty, under the Federal Death Penalty Act of 1994, for the three capital charges. At a hearing on December 3, 2007, with the support of counsel and without a deal with the government, Defendant pleaded guilty to all ten charges in the indictment.

Jury selection for Defendant's penalty phase hearing began as scheduled on April 14, 2008. During the second day of jury selection, though, Defendant informed the court that he wanted to represent himself. The court held a hearing on Defendant's request, concerned particularly with Defendant's competence. After examining Defendant, the court directed the parties to confer and to submit the names of three local

Case: 08-99031, 07/12/2011, ID: 7821100, DktEntry: 30-6, Page 5 of 19

experts who could evaluate Defendant's competence to proceed without counsel. One week after that hearing, the court issued an order referring Defendant to a local clinical psychologist whom the parties jointly recommended to evaluate Defendant's competence. The court stated its preliminary conclusion that Defendant had the competence to proceed.

On May 2, 2008, defense counsel formally moved for an order finding Defendant incompetent or, in the alternative, for a hearing on Defendant's competence. Counsel filed reports from three experts in support of the motion, all of whom had examined Defendant personally and had found him to be incompetent to represent himself. The doctors all thought that Defendant suffered from delusions that impaired his judgment and rendered him unable to understand the proceedings or to waive his right to counsel intelligently.

On May 8, 2008, the court-appointed psychologist filed his report with the court. The psychologist had interviewed Defendant three times. Although he found Defendant's thoughts to be "somewhat unusual," the psychologist concluded that Defendant was not delusional. He opined that Defendant could understand the nature and consequences of the proceedings against him, that Defendant could assist properly in his defense, and that Defendant had waived counsel knowingly, intelligently, and voluntarily.

The government initially moved to have Defendant evaluated by a second expert. But, after receiving the court-appointed psychologist's report, the government withdrew that motion. Nevertheless, the district court, acting on its own motion, decided to order a second evaluation to be conducted by the Federal Bureau of Prisons. The court sent Defendant to the Metropolitan Detention Center in SeaTac, Washington, for an evaluation. Defendant's period of assessment began on May 23, 2008, and lasted six weeks.

During that time, a forensic psychologist observed Defendant's behavior, reviewed Defendant's medical and mental

Case: 08-99031, 07/12/2011, ID: 7824100, DktEntry: 30-6, Page 6 of 14

9246                UNITED STATES v. DUNCAN

health records, and spoke extensively with Defendant's law-
yers. She also reviewed the reports prepared by Defendant's
three experts and the other court-appointed psychologist. For
the most part, Defendant refused to participate in the evalua-
tion.

The forensic psychologist found no evidence of psychotic
behaviors or thought processes. Though Defendant held
"some very strong spiritual and ideological viewpoints
regarding religion," the psychologist did not think that those
beliefs were delusional because such beliefs are "not uncom-
mon among other subsets of highly religious, devout, or spiri-
tual individuals." She concluded that Defendant could
represent himself competently.

On July 24, 2008, the district court denied defense coun-
sel's motion for a competency hearing and allowed Defendant
to proceed without counsel. The court found the opinions of
the court-appointed psychologists to be more credible than
those of the defense experts, and the court agreed with the
court-appointed psychologists that Defendant's ideas, though
"uncommon," showed "a level of intelligence more than suffi-
cient to evidence his understanding of [the] proceeding and
his competency to proceed." In addition, the court observed
that Defendant had not displayed irrational behavior in court;
that Defendant had stated that he understood the nature of the
proceedings during his plea hearing; that defense counsel had
never before called into question Defendant's competence;
and that no question regarding Defendant's competence arose
during the state court proceedings. For those reasons, and on
the recommendations of the court-appointed psychologists,
the court denied defense counsel's motion to declare Defen-
dant incompetent. The court appointed Defendant's three law-
yers to act as Defendant's standby counsel.

The penalty phase hearing convened on August 13, 2008.
The government spent ten days presenting its evidence. After
the government rested, Defendant called himself as his only

witness. Defendant did not make a statement in his defense. When the government indicated that it had no questions, Defendant left the stand and rested his case. After its deliberations, the jury unanimously recommended death sentences on all three capital counts. The district court sentenced Defendant to death.

Standby counsel filed a timely notice of appeal. The government moved to strike the notice because Defendant had informed the government that he had not given his consent to the appeal. Thereafter, the court received a letter from Defendant stating, "This is to inform the Court that if any appeal is initiated on my behalf it is done contrary to my wishes."

The district court held a hearing on the government's motion. The court first asked Defendant whether he understood his right to appeal. After several rambling responses, Defendant eventually answered, "I certainly understand my right, my right in quotes, and I have no desire, as I mentioned in the letter I wrote to you, to invoke it." On the basis of Defendant's statements, and in view of the court's previous competency determination, the court ruled that Defendant had knowingly, intelligently, and competently waived his right to appeal. The court therefore granted the government's motion to strike the notice of appeal.

We nevertheless agreed to hear an appeal limited to two issues: whether we lack jurisdiction because standby counsel has no standing to appeal; and, if we have jurisdiction, whether the district court erred in its determination that Defendant competently could represent himself and waive his right to appeal.

II.  *Discussion*

A.  *Standards of Review*

We review de novo the district court's ruling on standing. *La Asociacion de Trabajadores de Lake Forest v. City of Lake*

Case: 08-99031, 07/12/2011, ID: 7824100, DktEntry: 30-6, Page 8 of 19

9248         UNITED STATES v. DUNCAN

*Forest*, 624 F.3d 1083, 1087 (9th Cir. 2010). We employ a practical standard to review the denial of a motion for a competency hearing. We ask whether a reasonable judge, situated as was the trial judge who denied the motion, should have experienced doubt with respect to the defendant's competence. *de Kaplany v. Enomoto*, 540 F.2d 975, 983 (9th Cir. 1976) (en banc). We engage in a "comprehensive" review of the evidence, and we are "not limited by either the abuse of discretion or clearly erroneous standard." *Id.*

### B. *Jurisdiction*

**[1]** We begin, as we must, with the threshold jurisdictional question. When standby counsel filed their notice of intent to appeal, Defendant had no interest in appealing his sentence.[1] We therefore consider whether standby counsel may, against the wishes of their client, appeal from the district court's competency determination.

We already have answered that question in the affirmative. In *Mason ex rel. Marson v. Vasquez*, 5 F.3d 1220, 1221 (9th Cir. 1993), a death-sentenced state prisoner sought a writ of habeas corpus in federal district court. Before his petition could be heard, the petitioner decided to abandon his petition. When his lawyer opposed that decision, the petitioner discharged him. The lawyer nevertheless moved the district court for an order finding the petitioner incompetent to abandon his petition. The district court convened a competency hearing

---

[1] Shortly before argument, standby counsel informed us that Defendant has changed his mind and now wishes to endorse this appeal. We need not decide whether a defendant may withdraw his waiver of appeal, because standby counsel have standing in their own right to appeal the district court's competency ruling. And, because we hold that the district court made that ruling in error, we need not and do not reach any of standby counsel's other arguments. Standby counsel may press those arguments if, after the competency hearing for which we remand, they deem it appropriate to do so.

Case: 08-99031, 07/12/2011, ID: 7824366, DktEntry: 80-1, Page 9 of 12

and, at its conclusion, ruled that the petitioner competently had decided to dismiss his habeas petition. *Id.*

**[2]** Undeterred, the lawyer appealed that determination to this court. *Id.* at 1223. We held that, in the "unusual circumstance in which the petitioner and his appointed attorney are actively contesting the petitioner's competence" as between themselves, the lawyer, "as a participant for [the petitioner] in the proceedings, is . . . entitled to appeal the court's decision of mental competence, which would otherwise remain unreviewed in a death penalty case." *Id.* Indeed, we recognized that in some cases a lawyer bears an "ethical obligation, acting in the best interest of his client, to contest [his client's] competency to dismiss his action." *Id.* (citing *Lenhard v. Wolff*, 603 F.2d 91, 92-93 (9th Cir. 1979) (per curiam)). Although "the petitioner is entitled to guide the course of his litigation, including dismissing his action either on his own or through an attorney of his choice," he must be "mentally competent to do so." *Id.* His lawyer therefore has limited standing to appeal from a finding of mental competence to ensure the validity of a petitioner's decision to dismiss his habeas petition.

The government would have us distinguish *Mason* from the facts here because *Mason* arose in the context of a habeas proceeding, while this case involves Defendant's direct appeal. We see no legal significance in that distinction. A defense lawyer's obligation to protect his client from incompetently waiving the right to a direct appeal is at least as strong as is the lawyer's obligation to prevent his client from incompetently dismissing a federal habeas petition. Indeed, in the former circumstance there has been no process by which to review a defendant's conviction and sentence, while in the latter circumstance the state courts remain available to perform such a review.

In *Mason*, for instance, the California Supreme Court had considered the merits of the petitioner's habeas claims three

Case: 08-99031, 07/12/2011, ID: 7814100, DktEntry: 30-1, Page 10 of 19

9250                  UNITED STATES v. DUNCAN

times. *Id.* at 1221. Here, by contrast, no court has had an opportunity to decide whether the district court afforded Defendant the process necessary to impose a valid death sentence. Our concern that claims might "otherwise remain unreviewed in a death penalty case," *id.* at 1223, is therefore heightened here, not lessened.

The government argues that Defendant's competence may be challenged by a next friend in a habeas proceeding brought under 28 U.S.C. § 2255, and so the government urges us to deny standby counsel standing to proceed here and await a § 2255 motion. That suggestion ignores our holding in *Mason*, 5 F.3d at 1223, that standby counsel have standing for the limited purpose of appealing the district court's competency determination. That holding is the law of this circuit, and we have no authority to decide not to follow it. *Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (en banc).

**[3]** In sum, our holding in *Mason* applies as much in the context of a direct appeal as it does in the context of a federal habeas proceeding. Having thus found standby counsel's standing firmly established in our precedent, we turn to the main issue: whether the district court properly found Defendant to be competent without having held a hearing.

C.   *The Competency Determination*

We begin with first principles. The Constitution provides criminal defendants with the right to be competent during trial. *Indiana v. Edwards*, 554 U.S. 164, 170 (2008) (citing *Dusky v. United States*, 362 U.S. 402 (1960) (per curiam), and *Drope v. Missouri*, 420 U.S. 162 (1975)). At all times before his conviction, a defendant must have "a rational as well as factual understanding of the proceedings against him" and "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding." *Id.* (internal quotation marks and emphasis omitted). If a defendant fails to satisfy either of those requirements, then the proceedings

against him may go no further. *Id.* And the competency right
does not end at a conviction. In addition, a defendant must
have the " 'capacity to appreciate his position and make a
rational choice' " whether to challenge his conviction or sen-
tence on appeal or in post-conviction proceedings. *Miller ex
rel. Jones v. Stewart*, 231 F.3d 1248, 1250 (9th Cir. 2000)
(quoting *Rees v. Peyton*, 384 U.S. 312, 313 (1966) (per
curiam)). That standard applies as well when a defendant
decides to abandon an appeal after having properly filed it. *Id.*

**[4]** The difficulty in this case arose when Defendant
decided to exercise two other rights given to him by the Con-
stitution. First, he chose to waive his right to counsel and to
represent himself during his penalty phase trial. Second, he
decided to waive his right to appeal his sentence. Neither of
those decisions is valid if not competently made. *Id.* Here, we
must decide whether the district court properly found Defen-
dant competent with respect to the appeal waiver without hav-
ing held a hearing on the matter before making its decision.

**[5]** Congress has set out specific procedures for determin-
ing a criminal defendant's mental competence. 18 U.S.C.
§ 4241. Those procedures apply here because Defendant's
lawyers moved for a competency hearing before the trial. *See
id.* § 4241(a) (governing motions for competency hearings
made "[a]t any time after the commencement of a prosecution
. . . and prior to the sentencing of the defendant"). The statute
compels the district court to hold a competency hearing, either
on defense counsel's motion or on its own motion, "if there
is reasonable cause to believe that the defendant may pres-
ently be suffering from a mental disease or defect rendering
him mentally incompetent to the extent that he is unable to
understand the nature and consequences of the proceedings
against him or to assist properly in his defense." *Id.* We must
decide whether the evidence established "reasonable cause" to
believe that Defendant lacked the competence required to rep-
resent himself and to waive his right to an appeal. We think

Case: 08-99031, 07/12/2011, ID: 7814100, DktEntry: 80-1, Page 12 of 19

9252        United States v. Duncan

that it did and, thus, that the district court erred when it concluded otherwise.[2]

[6] Standby counsel produced reports from three experts, all well established and highly regarded in the field of neuropsychiatry, who had examined Defendant personally and had found him to suffer from—in the words of one of the experts—"delusional beliefs, paranoia, grandiosity, and psychotic breaks with reality." All three experts formed the same opinion that—in the words of another of the experts—Defendant's "mental diseases and defects render him incapable of rationally understanding and participating in the proceedings, and therefore incompetent."

[7] Standby counsel also produced results from a magnetic resonance imaging (MRI) study and positron emission tomography (PET) scan of Defendant's brain. The results of those tests, according to one of Defendant's experts, showed "an unusual brain structure" consistent with behavioral deficits in "the ability to make rational plans and modulate emotions." The expert opined that Defendant's brain dysfunction contributes to his "severe psychosis" and "elaborate delusional system," which "render[ ] him unable to have a rational understanding of the proceedings or to waive his right to

---

[2]The "reasonable cause" standard set out in § 4241(a) tracks the standard for deciding the need for a competency hearing that we have used in our cases. *See de Kaplany v. Enomoto*, 540 F.2d 975, 981 (9th Cir. 1976) (en banc) (holding that, at any time "there is any evidence which, assuming its truth, raises a reasonable doubt about the defendant's competenc[e]," the trial court "sua sponte must order an evidentiary hearing on the competency issue"). At times, we have formulated our standard in slightly different terms, holding that a competency hearing should take place "at any time that there is 'substantial evidence' that the defendant may be mentally incompetent to stand trial." *Moore v. United States*, 464 F.2d 663, 666 (9th Cir. 1972) (per curiam). But both of our formulations lead to the same bottom line. As we explained in *Moore*, "[e]vidence is 'substantial' if it raises a reasonable doubt about the defendant's competenc[e] to stand trial." *Id.* Accordingly, the test, whether taken from § 4241(a) or our cases, is the same.

counsel and to represent himself." Defendant's other two experts agreed with that conclusion.

In addition to the expert evidence, the district court had before it several letters written by Defendant in prison while waiting for his day in court. Often in those letters, Defendant made philosophical observations and arguments rooted in his religious beliefs. Some of those arguments appear rational. For example, Defendant implored his family members not to testify in his defense because, in his words, "there simply is no excuse or mitigating evidence to justify or minimize what I did." That Defendant wants to accept punishment for his crimes does not necessarily imply incompetence. *See Davis v. Woodford*, 384 F.3d 628, 645 (9th Cir. 2004) (concluding that, even though the defendant was "recalcitrant and acted in ways that were detrimental to his case," the trial judge was not compelled to hold a competency hearing).

**[8]** But others of Defendant's statements are unusual, and his writings suggest that those unusual beliefs played a significant role in his decisions about how to conduct his defense. It does not surprise us that different experts interpreted Defendant's beliefs differently. Defendant's experts all think that his beliefs fall too far beyond mainstream religious thought to be considered rational. The court-appointed experts both disagreed. While recognizing that Defendant's beliefs fall at the outer reaches of mainstream theology, those experts did not find the beliefs unusual enough to be considered delusions.

**[9]** We express no opinion on which of the experts has the better of the argument. That decision rests in the first instance with the district court. We hold only that the evidence described above creates a "reasonable doubt" about Defendant's competence, such that § 4241(a) required a full competency hearing before the district court could reach a decision.

9254                    UNITED STATES v. DUNCAN

III.   *Conclusion*

**[10]**  We remand to the district court for a hearing to deter-
mine whether Defendant competently waived his right to
appeal.[3] If the court again finds that Defendant competently
waived his right to appeal, then the court should reinstate its
previous order. If the court finds that Defendant did not com-
petently waive that right, then the court should proceed to
determine whether Defendant competently waived his right to
counsel before the penalty phase hearing. If the court further
finds that Defendant did not competently waive his right to
counsel, then it should vacate Defendant's sentence and con-
vene a new penalty phase hearing with Defendant properly
represented. We express no view on the merits of any of those
issues.

This panel will assume jurisdiction over any future appeals
in this case.

REVERSED and REMANDED with instructions.

---

[3]We recognize that the Supreme Court has cautioned against retrospec-
tive assessments of a defendant's competence. *See Pate v. Robinson*, 383
U.S. 375, 387 (1966) (rejecting the state's suggestion to hold a retrospec-
tive competency hearing and requiring the state to retry the defendant
instead). But, in circumstances similar to those here, we have held that
such assessments can be made. In particular, "when the record contains
sufficient information upon which to base a reasonable psychiatric judg-
ment," we have declined to put the government to the expense of a new
trial. *Odle v. Woodford*, 238 F.3d 1084, 1089-90 (9th Cir. 2001); *see also
de Kaplany*, 540 F.2d at 986 n.11. Because this record falls comfortably
within that category, we remand for a retrospective competency hearing.

## United States Court of Appeals for the Ninth Circuit

### Office of the Clerk
95 Seventh Street
San Francisco, CA 94103

### Information Regarding Judgment and Post-Judgment Proceedings
(December 2009)

**Judgment**
- This Court has filed and entered the attached judgment in your case. Fed. R. App. P. 36. Please note the filed date on the attached decision because all of the dates described below run from that date, not from the date you receive this notice.

**Mandate (Fed. R. App. P. 41; 9th Cir. R. 41-1 & -2)**
- The mandate will issue 7 days after the expiration of the time for filing a petition for rehearing or 7 days from the denial of a petition for rehearing, unless the Court directs otherwise. To file a motion to stay the mandate, file it electronically via the appellate ECF system or, if you are a pro se litigant or an attorney with an exemption from using appellate ECF, file one original motion on paper.

**Petition for Panel Rehearing (Fed. R. App. P. 40; 9th Cir. R. 40-1)**
**Petition for Rehearing En Banc (Fed. R. App. P. 35; 9th Cir. R. 35-1 to -3)**

**(1) A. Purpose (Panel Rehearing):**
- A party should seek panel rehearing only if one or more of the following grounds exist:
   ► A material point of fact or law was overlooked in the decision;
   ► A change in the law occurred after the case was submitted which appears to have been overlooked by the panel; or
   ► An apparent conflict with another decision of the Court was not addressed in the opinion.
- Do not file a petition for panel rehearing merely to reargue the case.

**B. Purpose (Rehearing En Banc)**
- A party should seek en banc rehearing only if one or more of the following grounds exist:

Post Judgment Form - Rev. 12/2009                                                    1

> ► Consideration by the full Court is necessary to secure or maintain uniformity of the Court's decisions; or
>
> ► The proceeding involves a question of exceptional importance; or
>
> ► The opinion directly conflicts with an existing opinion by another court of appeals or the Supreme Court and substantially affects a rule of national application in which there is an overriding need for national uniformity.

**(2)   Deadlines for Filing:**
- A petition for rehearing may be filed within 14 days after entry of judgment.  Fed. R. App. P. 40(a)(1).
- If the United States or an agency or officer thereof is a party in a civil case, the time for filing a petition for rehearing is 45 days after entry of judgment.  Fed. R. App. P. 40(a)(1).
- If the mandate has issued, the petition for rehearing should be accompanied by a motion to recall the mandate.
- *See* Advisory  Note to 9th Cir. R. 40-1 (petitions must be received on the due date).
- An order to publish a previously unpublished memorandum disposition extends the time to file a petition for rehearing to 14 days after the date of the order of publication or, in all civil cases in which the United States or an agency or officer thereof is a party, 45 days after the date of the order of publication.  9th Cir. R. 40-2.

**(3)   Statement of Counsel**
- A petition should contain an introduction stating that, in counsel's judgment, one or more of the situations described in the "purpose" section above exist.  The points to be raised must be stated clearly.

**(4)   Form & Number of Copies (9th Cir. R. 40-1; Fed. R. App. P. 32(c)(2))**
- The petition shall not exceed 15 pages unless it complies with the alternative length limitations of 4,200 words or 390 lines of text.
- The petition must be accompanied by a copy of the panel's decision being challenged.
- An answer, when ordered by the Court, shall comply with the same length limitations as the petition.
- If a pro se litigant elects to file a form brief pursuant to Circuit Rule 28-1, a petition for panel rehearing or for rehearing en banc need not comply with Fed. R. App. P. 32.

Case: 08-99031, 07/21/2011, ID: 7824180, DktEntry: 86-2, Page 3 of 5

- The petition or answer must be accompanied by a Certificate of Compliance found at Form 11, available on our website at   under *Forms*.
- You may file a petition electronically via the appellate ECF system.  No paper copies are required unless the Court orders otherwise.  If you are a pro se litigant or an attorney exempted from using the appellate ECF system, file one original petition on paper.  No additional paper copies are required unless the Court orders otherwise.

## Bill of Costs (Fed. R. App. P. 39, 9th Cir. R. 39-1)
- The Bill of Costs must be filed within 14 days after entry of judgment.
- See Form 10 for additional information, available on our website at   under *Forms.*

## Attorneys Fees
- Ninth Circuit Rule 39-1 describes the content and due dates for attorneys fees applications.
- All relevant forms are available on our website at  under *Forms* or by telephoning (415) 355-7806.

## Petition for a Writ of Certiorari
- Please refer to the Rules of the United States Supreme Court at

## Counsel Listing in Published Opinions
- Please check counsel listing on the attached decision.
- If there are any errors in a published opinion, please send a letter **in writing within 10 days** to:
    - ► West Publishing Company; 610 Opperman Drive; PO Box  64526; St. Paul, MN 55164-0526 (Attn: Kathy Blesener, Senior Editor);
    - ► and electronically file a copy of the letter via the appellate ECF system by using "File Correspondence to Court," or if you are an attorney exempted from using the appellate ECF system, mail the Court one copy of the letter.

**Form 10. Bill of Costs** .................................................................................................................*(Rev. 12-1-09)*

## United States Court of Appeals for the Ninth Circuit

## BILL OF COSTS

**Note:** If you wish to file a bill of costs, it MUST be submitted on this form and filed, with the clerk, with proof of service, within 14 days of the date of entry of judgment, and in accordance with 9th Circuit Rule 39-1. A late bill of costs must be accompanied by a motion showing good cause. Please refer to FRAP 39, 28 U.S.C. § 1920, and 9th Circuit Rule 39-1 when preparing your bill of costs.

|  |  |  |
|---|---|---|
|  | v. | 9th Cir. No. |

The Clerk is requested to tax the following costs against:

| Cost Taxable under FRAP 39, 28 U.S.C. § 1920, 9th Cir. R. 39-1 | REQUESTED Each Column Must Be Completed | | | | ALLOWED To Be Completed by the Clerk | | | |
|---|---|---|---|---|---|---|---|---|
|  | No. of Docs. | Pages per Doc. | Cost per Page* | TOTAL COST | No. of Docs. | Pages per Doc. | Cost per Page* | TOTAL COST |
| Excerpt of Record |  |  | $ | $ |  |  | $ | $ |
| Opening Brief |  |  | $ | $ |  |  | $ | $ |
| Answering Brief |  |  | $ | $ |  |  | $ | $ |
| Reply Brief |  |  | $ | $ |  |  | $ | $ |
| Other** |  |  | $ | $ |  |  | $ | $ |
|  |  |  | TOTAL: | $ |  |  | TOTAL: | $ |

\* Costs per page may not exceed .10 or actual cost, whichever is less. 9th Circuit Rule 39-1.

\*\* Other: Any other requests must be accompanied by a statement explaining why the item(s) should be taxed pursuant to 9th Circuit Rule 39-1. Additional items without such supporting statements will not be considered.

Attorneys' fees **cannot** be requested on this form.

*Continue to next page.*

**Form 10. Bill of Costs - *Continued***

I, [                    ] , swear under penalty of perjury that the services for which costs are taxed were actually and necessarily performed, and that the requested costs were actually expended as listed.

Signature [                    ]

("s/" plus attorney's name if submitted electronically)

Date [                    ]

Name of Counsel: [                    ]

Attorney for: [                    ]

_____

(To Be Completed by the Clerk)

Date [                    ]     Costs are taxed in the amount of $ [                    ]

Clerk of Court

By: [                    ] , Deputy Clerk